UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In the Matter of C.G., | Case No. 17-cv-12179-SDW-LDW |
| Petitioner, | **CERTIFICATION OF** |
| v. | **PATRICIA E. APY, ESQ.** |
| Niurka Gonzalez, | |
| Respondent | |

Patricia E Apy, of full age, being duly sworn according to law, upon my oath hereby deposes and states:

1. On or about February 21, 2018, I was contacted by the judicial law clerk, of the Honorable Susan D Wigenton USDJ to inquire as to my availability to serve as law guardian for a minor child in the above captioned matter. I requested the names of the litigants and immediate ran a conflicts check prior to continuing the conversation. Our conflicts review is designed to indicate initial consultation in the form phone calls, personal consultations or email exchanges between counsel and clients. That search was negative.

2. As a result of my conversation the Court requested that I assist in the preparation of the form of order. On March 14, 2018 the Court executed the Order for Provisional Remedies pursuant to 22 USC sec. 9004(a) and appointed me counsel for the child.

3. Notably, that order confirmed that all of the services I would render as Law guardian would be to the Court on behalf of the child. I am empowered to "conduct such interviews and investigations" as I may deem "necessary and relevant". I am empowered to file "any pleadings on behalf of the child's interest".. with the ultimate goal that in this role I "ensure

that facts and arguments relevant to the disposition of the case, and which are therefore critically relevant to the child's interests, are brought to the Court's attention."

4. Nearly two weeks after the filing of the court order appointing me, on March 27, 2018, I received a call to my cell phone from Robert D Arenstein, attorney for the federal Petitioner. We spoke for 11 minutes. I should note that I have known Mr. Arenstein for at least 25 years and we have participated together on several professional organizations. On at least one occasion he has recommended my retention as an expert witness, in a matter in which he had been retained as co-counsel involving international child custody litigation.

5. While the declaration submitted by Mr. Arenstein confirms that we spoke, the remainder of the paragraph is inaccurate or misleading. Mr. Arenstein asked for my preliminary thoughts regarding my role and this matter. I indicated that while I had not spoken to either litigant, I had reviewed the filed federal pleadings. I voiced concerns about the petition, and the exercise of this Court's permissive jurisdiction in this matter, consistent with the Treaty, given what I understood to have been the factual basis of the allegations. I discussed the existing law of habitual residence and consent and acquiescence. Mr. Arenstein voiced his disagreement with my initial analysis. I asked Mr. Arenstein if his client wished to make an appointment to discuss this matter with me, and provide his thoughts, or any additional information directly to me. Mr. Arenstein indicated he would ask his client. No mention of prior contact with our office occurred, despite his having had the order for appointment since March 14.

6. The next day (March 28, 2018), I received a cell phone message from Mr. Arenstein at approximately 3:30 in the afternoon, requesting that I call him back, indicating that it was "important" Three minutes later I received a second cell phone message from another

phone number. When I listened to the message, it was clear that Mr. Arenstein had also simultaneously called my office number. A secretary in our office is recorded as saying "she's still on the other line, do you still want to hold", to which Mr. Arenstein goes on to say "I'll hold". Then Mr. Arenstein repeated his earlier message, indicating "It's very important, I need to talk to you about the Gerval case …I believe you had *conversations* with him prior to being appointed and I need to talk to you about that." The entire recording lasted about 31 seconds.

7. Because I was confident that I had never spoken with Mr. Gerval, I believed that there had to have been some misunderstanding. I immediately ran an email check of my own personal laptop, which was negative. I requested my paralegal run a check on our entire server.. The server check revealed that Mr. Gerval had sent an unsolicited email on May 15, 2017 to our firm general email box, which I do not access at all. With his email, Mr. Arenstein's client and had appended a zip drive, the contents of which remain unknown to me.

8. I receive hundreds of emails from prospective clients and other interested parties from around the world. In virtually all cases my paralegal arranges the intake and screens the inquiries. She may inquire from me as to whether I have capacity to take any additional cases or other scheduling details. She runs a conflict check and emails or speaks with the prospective client, sending forms (like a CIS). I do not review any documentation sent unless we are retained for the initial consultation. I have no idea why an initial consultation did not take place. However, I did not review any of the appended documentation submitted by Mr. Gerval. I believe the emails attached as exhibits are consistent with our process.

9. I immediately (on March 28, 2018) sent an email to Mr. Arenstein clearing up any confusion.

"after doing a server email check we discovered that your client sent an email to our general firm email seeking a consultation . My paralegal invited him (again by email, as she does on all potential inquiries, to send any information) Your client sent an email to my paralegal on May 15, 2017, to which he attached a Zip file. I have never spoken to your client, and neither I nor my paralegal have never opened the zip drive. I have no idea what the contents of the zip drive were. I was not consulted, and provided no advice in written or oral form, I do not believe that under the rules of professional conduct, and recent case law on the subject of conflict, that your client's email to our firm requesting a consultation would in any way pose a conflict. Let me know if you still need to chat regarding this issue."

I believed that this issue had been completely resolved. I did not point out that the allegation in the phone message, that I had had "conversations" with Mr. Gerval were patently false, as I felt the detailed explanation should suffice.

10. Mr. Arenstein's response to my email was belligerent and argumentative. I was genuinely surprised that my email had not resolved the issue entirely. Mr. Arenstein then recounted that a second unsolicited email had been sent to our firm, six months after the first email, this time to my direct email. He indicates the content of the email describing it as "confidential papers". I continued to indicate that I had neither received nor reviewed any such email. Mr. Arenstein's declaration goes on to describe our conversation in his filed pleadings as "her denial of not receiving this email does not pass the test of truth based on my conversation with her and this email. It was clearly sent to her personal email." There was nothing in the conversation we had nor in the information presented that would permit Mr. Arenstein to accuse me of misrepresenting the facts to this Court. Indeed Mr. Arenstein

repeatedly contacted my office and my paralegal attempting to read to her the content of the emails in question, and to badger my paralegal regarding "conversations" he alleged had occurred. I directed my paralegal not to respond to such actions.

11. Mr. Arenstein's letter to the court of March 29, 2018 alleges "prior communications" which he asserts have disclosed "confidential and privileged communications". In fact, no such communications have ever occurred, and the unsolicited email communications by Mr. Gerval to a general email address does not render such communications privileged or confidential. While Mr. Arenstein indicates that the October 19, 2017 email occurred "as a result of these communications", there is no evidence that supports the claim. Because I have never read the materials that were allegedly sent by Mr. Gerval, I have no idea (nor have I requested a reason) why those materials would be prejudicial to Mr. Gerval, nor do I know why Mr. Arenstein's client didn't ask him to initially raise the issue of conflict, before he had the benefit of my preliminary thoughts on the case. I do not believe that any of my actions reflect an appearance of impropriety in any way.

12. Mr. Arenstein's declaration reflects the actual and unfortunate motivation in seeking my disqualification. In paragraph 6 when he attempts to summarize our very brief conversation he indicates that I "stated reservations about whether [his] client had agreed to stay for an undetermined period of time." He then asserts a completely unsupported argument that "She could not have known this unless she read all the documents. *I disagreed* with her about her assumption and discussed this with my client."

The fact that Mr. Arenstein disagreed with my preliminary observations cannot and should not be a basis to disqualify an officer of the Court, acting on behalf of the child. My

conclusions were based upon the initial pleadings filed, and the difficulties that I saw in them based upon the application of case law.

13. I agree with Mr. Arenstein, that I am not the trier of fact. I am deeply concerned however, as counsel for the child, that Mr. Arenstein, by creating a "conflict" is attempting to limit the most important role of the Law Guardian, which is to "ensure that facts and arguments relevant to the disposition of the case, and which are therefore critically relevant to the child's interests" be brought forward to the Court. I have indicated my continued willingness to submit upon my declaration and the papers for the resolution of this issue. I also understand, given the unfortunate delay and distraction this has caused, why the Court may wish to reconsider my appointment, so as not to complicate this matter or the record. However, in the event the Court determines to appoint alternate counsel, I would respectfully request that the record clearly reflect that such action is not as a result of any conflict of interest on our part.

I certify that the foregoing statements made by me are true. I am aware that, if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
PATRICIA E. APY, ESQ
Attorney I.D.# 020641986